UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KURT ANGELONE,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL FURST, *et al.*,<br><br>　　　　　　　　Defendants. | Case No. C07-5538RJB-KLS<br><br>REPORT AND RECOMMENDATION<br><br>Noted for October 17, 2008 |

This matter has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. §§ 636(b)(1)(A) and 636(b)(1)(B) and Local Rules MJR 1, MJR 3, and MJR 4. This matter comes before the Court on defendant Michael Furst's motion for summary judgment. (Dkt. #84). Having reviewed defendant Furst's motion, plaintiff's response to that motion, defendant Furst's reply thereto, and the remaining record, the undersigned submits the following report and recommendation for the Honorable Robert J. Bryan's review.

## FACTUAL AND PROCEDURAL BACKGROUND

This case involves a civil rights action under 42 U.S.C. § 1983 filed by plaintiff against defendant Furst and other named defendants for violations of his federal constitutional rights. (Dkt. #6). Specifically with respect to defendant Furst (hereinafter referred to as "defendant") – who is under contract with the Washington State Department of Corrections to provide psychiatric services to inmates – violated his right to privacy by not ensuring the confidentiality of their doctor-patient discussions. Plaintiff further claims defendant violated his Eighth Amendment right to be free from cruel and unusual

1 punishment by denying him the use of certain psychiatric medications in retaliation for complaining that
2 he was violating his right to privacy. Plaintiff seeks compensatory and punitive damages, as well as
3 injunctive relief.
4 In his motion for summary judgment, defendant argues plaintiff's claim that he violated his right
5 to privacy should be dismissed because plaintiff has failed to show any such right was actually violated.
6 Defendant also argues plaintiff's Eighth Amendment claim should be dismissed because plaintiff has not
7 shown that he was deliberately indifferent to his medical needs. (Dkt. #84). Plaintiff has filed a response
8 to defendant's motion (Dkt. #93) and defendant has replied thereto (Dkt. #94). Defendant's motion thus
9 is now ripe for consideration. For the reasons set forth below, the undersigned agrees with defendant, and
10 recommends that the Court dismiss plaintiff's claims against him.

## DISCUSSION

Summary judgment shall be rendered if the pleadings, exhibits, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56(c). In deciding whether summary judgment should be granted, the Court "must view the evidence in the light most favorable to the nonmoving party," and draw all inferences "in the light most favorable" to that party. T.W. Electrical Serv., Inc. v. Pacific Electrical Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987). When a summary judgment motion is supported as provided in Fed. R. Civ. P. 56, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in Fed. R. Civ. P. 56, must set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). If the nonmoving party does not so respond, summary judgment, if appropriate, shall be rendered against that party. Id. The moving party must demonstrate the absence of a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). Mere disagreement or the bald assertion that a genuine issue of material fact exists does not preclude summary judgment. California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987). A "material" fact is one which is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit," and the materiality of which is "determined by the substantive law governing the claim." T.W. Electrical Serv., 809 F.2d at 630.

1    Mere "[d]isputes over irrelevant or unnecessary facts," therefore, "will not preclude a grant of
2    summary judgment." Id. Rather, the nonmoving party "must produce at least some 'significant probative
3    evidence tending to support the complaint.'" Id. (quoting Anderson, 477 U.S. at 290); see also California
4    Architectural Building Products, Inc., 818 F.2d at 1468 ("No longer can it be argued that any
5    disagreement about a material issue of fact precludes the use of summary judgment."). In other words,
6    the purpose of summary judgment "is not to replace conclusory allegations of the complaint or answer
7    with conclusory allegations of an affidavit." Lujan v. National Wildlife Federation, 497 U.S. 871, 888
8    (1990).

I.    Standard of Review for Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, a complaint must allege: (i) the conduct complained of was committed by a person acting under color of state law, and (ii) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327 (1986). Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present. Haygood v. Younger, 769 F.2d 1350, 1354 (9th Cir. 1985).

"[A] private party acts under color of state law if 'he is a willful participant in joint action with the State or its agents,'" or "if 'there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself.'" Lopez v. Department of Health Services, 939 F.2d 881, 883 (9th Cir. 1991) (citing Dennis v. Sparks, 449 U.S. 24, 27 (1980), and Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351 (1974)) (contract with state to provide medical services to indigent citizens sufficient to support section 1983 claim); see also West v. Atkins, 487 U.S. 42, 54-55 (1988) (private physician under contract with state to provide medical services to inmates was state actor for purposes of section 1983).

II.   Plaintiff's Eighth Amendment Claim

The Eighth Amendment prohibits those "punishments which are incompatible with 'the evolving standards of decency that mark the progress of a maturing society . . . or which involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 102-03 (1976) (citations omitted). To state a claim under the Eighth Amendment, plaintiff must satisfy two requirements. First, the deprivation

being alleged "must be, objectively, 'sufficiently serious.'" Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citation omitted). That is, the prison official's "act or omission must result in the denial of 'the minimum civilized measure of life's necessities.'" Id. For claims based on failure to prevent harm, the inmate also must show he was "incarcerated under conditions posing a substantial risk of serious harm." Id.

In addition to this "objective component," there is a subjective one. Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996). The prison official thus also "must have a 'sufficiently culpable state of mind.'" Farmer, 511 U.S. at 834 (citation omitted); Helling v. McKinney, 509 U.S. 25, 33 (1993) ("[A] claim that a prisoner's confinement violate[s] the Eighth Amendment requires an inquiry into the prison officials' state of mind."). This state of mind "is one of 'deliberate indifference' to inmate health or safety." Farmer, 511 U.S. at 834. In other words, liability under the Eighth Amendment "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Id. at 835 (citation omitted). An official, therefore, will not be liable:

> [U]nless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harms exists, and he must also draw the inference.

Id. at 837; see also Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995). A prison "official's failure to alleviate a significant risk that he should have perceived but did not," therefore, cannot "be condemned as the infliction of punishment." Id. at 838.

Prison officials' "[d]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." Estelle, 429 U.S. at 104 (internal citation omitted); see also Hudson v. McMillan, 503 U.S. 1, 6 (1992). As such, the state "has an obligation to provide medical care" to those within its custody, and thus "cannot be deliberately indifferent to the medical needs of its prisoners." Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992). However, "not every breach of that duty is of constitutional proportions." Lopez, 203 F.3d at 1131 (quoting Estelle, 429 U.S. at 104 (1976)).

To state a cognizable Eighth Amendment claim in this context, a prisoner thus "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106; see also Lopez, 203 F.3d at 1131 (deliberate indifference to serious medical needs must be shown); McGuckin, 974 F.2d at 1059. Prison officials are "deliberately indifferent" to "serious medical

needs" when they "deny, delay, or intentionally interfere with medical treatment." Lopez, 203 F.3d at 1131. Deliberate indifference also may be shown "by the way in which prison physicians provide medial care." McGuckin, 974 F.2d at 1059.

On the other hand, "[m]ere negligence in diagnosing or treating a medical condition, without more," does not implicate the Cruel and Unusual Punishment Clause of the Eighth Amendment. Lopez, 203 F.3d at 1131; see also O'Loughlin v. Doe, 920 F.2d 614, 617 (9th Cir. 1990) (isolated occurrences of neglect do not amount to constitutional violation); Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998) (mere negligence in providing medical care does not violate constitution). By contrast, "a finding that the defendant repeatedly failed to treat an inmate properly or that a single failure was egregious strongly suggests that the defendant's actions were motivated by 'deliberate indifference' to the prisoner's medical needs." McGucken, 974 F.3d at 1060-61. The determination as to whether deliberate indifference exists, therefore, "involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." Id., 974 F.2d at 1059.

A "serious" medical need will be found to exist "if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" Id. (quoting Estelle, 429 U.S. at 104). The following examples are indications that a prisoner's need for medical treatment is "serious":

> The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.

Id. at 1059-60. As noted above, deliberate indifference to a prisoner's serious medical need requires "a purposeful act or failure to act on the part of the defendant." Id. at 1060. In other words, "[a] defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need." Id.

Plaintiff alleges in his complaint that defendant discontinued his medication by falsely accusing him of being a "diazpam [sic] seeker." (Dkt. #6, pp. 19-20, ¶ 13) (emphasis in original). Specifically, he alleges that defendant was "holding [his] medication hostage" in an attempt to intimidate him for filing grievances against him for violating his state and federal privacy rights related to "doctor-patient confidential privileges." (Id. at p. 20, ¶ 14). Plaintiff claims he told defendant that he would be filing a tort claim against him, whereupon defendant "became hostile and yelled" that he saw that defendant

Figueroa had started him on Valium for his headaches, and that he would tell defendant Figueroa that he was a diazepam seeker. (Id.). According to plaintiff, defendant also informed him that he was "fed up" with his "requests for privacy," and that he "ran the medical department." (Id.).

Plaintiff, in addition, alleges that four days after defendant Figueroa had prescribed him a different medication similar to the one that previously had been denied, defendant coerced defendant Figuera and other medical personnel into discontinuing it. (Id., p. 22, ¶ 15, p. 28, ¶ 19). Again, plaintiff claims that defendant did this in retaliation for his complaints regarding his privacy rights. (Id.). Plaintiff further claims that as a result of defendant retaliating against him in this manner, he continued "to suffer from excruciating head pain," as well as "from emotional injury," and his "other conditions" became "worse causing new medical and mental problems." (Id., pp. 28-29, ¶ 19). Plaintiff asserts that the fact that he was informed by other DOC officials that the medication he sought was not approved due to unavailability or cost, did not excuse defendant and other medical personnel from providing him with it. (Id., p. 21, ¶ 15, p. 33, ¶ 21; Dkt. #6-2, copies of grievances attached thereto).

In response to plaintiff's first request for admissions, defendant Figueroa admitted that defendant had mentioned to him in a conversation that plaintiff "was a diazepam seeker," and that he "could no longer prescribe Valium to" him "for his headache pain after" defendant ordered him "to discontinue prescribing it." (Dkt. #93-3, Exhibit 5, ¶¶ 20, 22-23). Defendant stated in a declaration plaintiff attached to his response that when he initially saw plaintiff, he reviewed prior treatment notes, which reflected that plaintiff "had frequently sought treatment with benzodiazepines."[1] (Id., Exhibit 6, p. 1). Defendant also stated that he told plaintiff he had "some concerns" about his taking benzodiazepines, and that he "would discuss them with his medical provider." (Id. at p. 2; Dkt. #95, Exhibit 1, Defendant Furst's Responses to Plaintiff's First Request for Admission, p. 2, ¶ 7).

In his responses to plaintiff's first request for admission, defendant admitted that he spoke with defendant Figueroa "about the fact that other medical providers had documented in plaintiff's medical records their opinion that he was seeking benzodiazepines and that he had sought those medications" from him. (Dkt. #95, Exhibit 1, p. 3, ¶ 22). Defendant also denied intimidating defendant Figueroa,

---

[1] In his answers to plaintiff's second set of interrogatories, defendant further states that he recalls having "briefly reviewed" plaintiff's "medical records before meeting with him initially," and "that there was a comment from an earlier provider stating that this patient was medication seeking, particularly in regard to benzodiazepines." (Id., Exhibit 10, p.1, ¶ 1).

REPORT AND RECOMMENDATION
Page - 6

stating that he instead expressed his "concern to him that plaintiff was receiving an unusual treatment with potential serious side effects for his alleged headaches." (Id. at ¶¶ 6 and 23). Defendant, in addition, has stated that he is "not involved in the pharmacy and therapeutics committee which makes decisions regarding whether to provide nonformulary medications to inmates." (Dkt. #93-3, Exhibit 6, p. 3).

Defendant argues plaintiff has failed to show deliberate indifference to his serious medical needs. The undersigned agrees. As defendant points out, the only evidence plaintiff comes forth with in support of his allegation that defendant withheld or discontinued his prescribed medication are bare allegations of what defendant supposedly told him.[2] Plaintiff provides no evidence that defendant actually withheld or discontinued his medication, or that he coerced or forced others to do so. Even if defendant had made the statements plaintiff attributed to him, furthermore, those statements still would not be sufficient to allege a valid Eighth Amendment claim. For example, the fact that defendant may have told defendant Figueroa or others that plaintiff was a diazepam seeker, does not at all mean that his medications were discontinued as a result thereof. Nor does the record necessarily show defendant was making a false statement here, or that he was not motivated out of a desire to provide proper medical care, since, as noted above, plaintiff's medical records apparently contained at least one comment from a previous medical provider that he was seeking medications, particularly benzodiazepines.

Although defendant Figueroa did admit that defendant told him plaintiff was a diazepam seeker, and that he could no longer prescribe Valium for him because defendant had ordered him to discontinue doing so, these admissions in themselves do not show that defendant did so for the purpose of retaliating against plaintiff. Again, as discussed above, there was at least some basis for defendant to tell plaintiff's medical providers about his prior medication seeking. Similarly, to the extent defendant did give an order that defendant Figueroa not prescribe plaintiff Valium, that same evidence concerning medication seeking also provided a valid basis for doing so. Indeed, there is no indication that defendant Figueroa disagreed

---

[2] Defendant also argues the statements plaintiff attributes to him constitute hearsay, which may not be used to support or oppose a motion for summary judgment. See Fed. R. Civ. P. 56(e)(1) (affidavit supporting or opposing motion must set out facts that would be admissible in evidence); Fed. R. Evid. 802 (hearsay not admissible except as provided by federal rules of evidence or other rules prescribed by Supreme Court). A statement is not hearsay, however, if it is offered against a party and it is that party's own statement. Fed. R. Evid. 801(d)(2). As such, statements attributed to defendant do not constitute hearsay.

1  with defendant on this issue or felt his actions were medically inappropriate.[3]  Plaintiff, furthermore, has
2  not come forth with any evidence to show that defendant was aware of any complaints or grievances filed
3  against him regarding plaintiff's privacy rights when he spoke to defendant Figueroa.

4  Defendant argues that plaintiff's claim here is merely a disagreement with his medical providers
5  as to the proper course of treatment for his medical condition. See Jackson v. McIntosh, 90 F.3d 330, 332
6  (9th Cir. 1996) (mere difference of medical opinion as to need for pursuing one course of treatment over
7  another insufficient, as matter of law, to establish deliberate indifference).  Here, however, as discussed
8  above, plaintiff alleges defendant had his prescribed medication withheld or discontinued for the purpose
9  of retaliating against him, and not because of any valid medical reasons. If proven, that certainly could
10 amount to a showing of deliberate indifference. See McGucken, 974 F.2d at 1060 (purposefully ignoring
11 or failing to respond to prisoner's pain or medical need constitutes deliberate indifference).  Nevertheless,
12 also as discussed above, plaintiff has failed to show that this is in fact what defendant did, and therefore to
13 sufficiently state an Eighth Amendment claim here.

14 III.   Plaintiff's Privacy Claim

15 Plaintiff also claims in his complaint that when he first went for mental health care and treatment
16 with Dr. Furst, he was escorted to one of five "no contact" rooms, the others of which were occupied by
17 an inmate waiting for or already seen by "the psychiatrist." (Dkt. #6, p. 24, ¶ 17).  According to plaintiff,
18 the rooms were partitioned by security glass, and they contained "communication devices" that allowed
19 "two-way conversations." (Id.).  While waiting for defendant, plaintiff states that he was able to overhear
20 "the complete dialogue between" defendant and another inmate sitting "three rooms away." (Id. at pp. 24-
21 25, ¶ 17).  Plaintiff states that he also was able to overhear other conversations as well. (Id. at p. 25, ¶ 17).
22 He claims that when defendant came to him, he was forced to choose between giving up his privacy rights
23 or not be treated, and was not able to discuss with defendant his mental state. (Id.).

24 Plaintiff filed a grievance regarding this incident, requesting that "any and all future appointments
25 with the psychiatrist be at a place arranged other than those [above-noted] rooms to secure and maintain

---

[3] Defendant Figueroa did admit that "a conflict may have arisen between Defendant Furst and myself if I had continued prescribing Valium for Plaintiff after Defendant Furst ordered me to discontinue prescribing it." (Dkt. #93-3, Exhibit 5, ¶ 24) (emphasis added).  However, this is not at all the same thing as defendant Figueroa stating that a conflict did occur or that he actually disagreed with the decision to discontinue the prescription.

REPORT AND RECOMMENDATION
Page - 8

confidentiality," to which the grievance coordinator responded in relevant part:

> . . . The facility/Unit has limited access to the psychiatrist and he asks that he not have to wait to see offenders so that his time is maximized. If you have confidential non-routine issues to discuss, you may request of the custody staff and/or psychiatrist to be seen in the hearings room.

(Dkt. #6-2, Level I – Initial Grievance no. 0524535). Plaintiff appealed this grievance, again requesting that "any and all visits, interviews, appointments, consultaitons, or otherwise with Dr. Furst be in confidence as there is really no such thing as routine discussions that doesn't [sic] require confidentiality." (Id., Appeal to Level II no. 0524535). The response to plaintiff's appeal reads in relevant part:

> . . . You have made a very valid point and we will ensure your confidentiality when meeting with any health care providers. To that end, our engineering staff will begin to look at physical plant issues that can be addressed. Thank you for bringing this to our attention.

(Id.).

In response to another grievance plaintiff filed accusing defendant of having continued to violate his patient confidentiality/privacy rights, the grievance coordinator stated that "several of the speaker systems" had been replaced by "telephone systems," which "increased confidentiality immensely," and that there were "plans to replace the remainder in the near future." (Id., Level I – Initial Grievance no. 0623466). In addition, plaintiff was told defendant was "willing to take anyone who has confidentiality concerns as his last client which additionally enhances confidentiality," although it was plaintiff's "responsibility to convey this concern to him." (Id.). A similar response was provided to plaintiff's appeal of that grievance, in which plaintiff also was informed that arrangements had been made for him to meet with defendant "last to ensure confidentiality." (Id., Appeal to Level II no. 0623466).

Plaintiff claims, however, that despite these assurances, defendant "blatantly ignored them" and did not respect his request for privacy, in violation of his right to doctor-patient confidentiality/privacy. (Dkt. # 6, pp. 32-34, ¶¶ 21-22; Dkt. #93-3, Exhibit 4). In response to a further appeal he filed regarding his last grievance, plaintiff was told in relevant part:

> . . . The institution has installed telephones in the no contact visit rooms to address the concern of confidentiality and Dr. Furst has offered to meet with you lastly to ensure that no other inmates are in the area to overhear any conversation. While the installation of telephones and the change in meeting time have occurred to ensure more confidentiality exists for the meetings between Dr. Furst and you, you contend that the changes are insufficient. I do not see evidence that confidentiality is compromised with

1       the implementation of these actions . . .
2  (Dkt. #93-3, Exhibit 4).

3       In his answers to plaintiff's second set of interrogatories, defendant stated that he recalls receiving an e-mail from a DOC employee regarding plaintiff's complaint "that conversations in the no contact booths were not sufficiently private in nature," and that he recommended "the installation of telephones in these booths." (Id., Exhibit 10, ¶ 5). Defendant stated in his responses to plaintiff's first request for admission that as a "contract physician" for the DOC, he does "not have the power to alter the physical layout" of the institution where plaintiff is incarcerated. (Id., Exhibit 16, ¶ 33). He further stated that he believed the telephone systems "had the potential to increase confidentiality," and that he "was willing to take anyone who had confidentiality concerns" as his last client. (Id.).

As noted above, plaintiff asserts the measures taken by DOC in response to his complaints were not sufficient, and that, in any event, defendant refused to honor his request for confidentiality. Defendant argues that appropriate action was taken to address plaintiff's confidentiality concerns, that plaintiff has not claimed that any confidential communications he had with defendant actually were overheard, and that plaintiff has made only unsubstantiated allegations regarding defendant's actions here. The undersigned agrees. First, it must be noted that plaintiff has not shown what specific constitutional or legal right has been violated by defendant with respect to doctor-patient communications. Even if plaintiff could identify such a specific right, he has not shown any violation thereof in this case.

The evidence presented to the Court clearly shows that reasonable efforts were made to provide plaintiff, or any other concerned inmate for that matter, the assurance that his communications with his medical providers, including defendant, would remain confidential. For example, speaker systems were replaced with telephone systems. Defendant offered to see any inmate, again including plaintiff, who had confidentiality concerns as his last patient of the day. Plaintiff claims defendant refused to do anything to honor his request for confidentiality, but, again, other than mere bare allegations, he offers no evidence to support that claim. The prison administration itself offered to allow plaintiff to meet with defendant in the prison's hearings room – with respect to which plaintiff could make a request to either the psychiatrist or "custody staff" to be seen there – and there is no indication in the record such an arrangement would

fail to provide plaintiff with the level of confidentiality he seeks.

## CONCLUSION

Defendant has met his burden of demonstrating that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. Plaintiff has failed in all instances to allege facts sufficient to form a constitutional violation. Accordingly, the undersigned recommends that the Court GRANT defendant's motion for summary judgment and dismiss all claims against him contained in the complaint. (Dkt. #84).

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedures, the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed.R.Civ.P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **October 17, 2008**, as noted in the caption.

DATED this 19th day of September, 2008.

Karen L. Strombom
United States Magistrate Judge